IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| A.F., by and through his father, Scott Fournier,<br><br>    Plaintiff,<br><br>v.<br><br>PORTLAND PUBLIC SCHOOL DISTRICT, an Oregon public school district,<br><br>    Defendant. | 3:19-cv-01827-BR<br><br>OPINION AND ORDER |

**BRENNA K. LEGAARD**
**JEFFRY EDEN**
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Ave., Suite 1900
Portland, OR 97204
(503) 222-9981

    Attorneys for Plaintiff

**CODY J. ELLIOTT**
**TAYLOR D. RICHMAN**
Miller Nash Graham & Dunn LLP
111 S.W. Fifth Ave., Suite 3400
Portland, OR 97204
(503) 224-5858

    Attorneys for Defendant

1 – OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Portland Public School District's Motion (#7) to Dismiss Plaintiff A.F.'s Complaint for failure to exhaust administrative remedies. The Court concludes the record is sufficiently developed such that oral argument would not be helpful to resolve this Motion.

For the reasons that follow, the Court **DENIES** Defendant's Motion.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint (#1,) and the Court accepts them as true for purposes of this Motion. *See Lazy Y Ranch, Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Plaintiff is a twelve-year-old child with a disability. He has been diagnosed with autism spectrum disorder and anxiety disorder and receives special education from Defendant. Plaintiff's neurodevelopmental pediatrician has prescribed Applied Behavior Analysis (ABA) therapy as a medically necessary treatment for Plaintiff's autism. This therapy is necessary to help Plaintiff to cope with stress and anxiety, to manage his emotions, to process language, to communicate with others, to

interact with peers, and to focus on tasks.  Thus, Plaintiff receives this therapy to address his developmental and behavioral deficits in multiple settings including school.

Plaintiff alleges he has realized significant developmental gains from this therapy, including decreased incidence and severity of maladaptive behaviors; improved social skills; and an improved ability to communicate, to focus, and to engage with other people.

In August 2019 Plaintiff began attending sixth grade at Jackson Middle School.  Plaintiff alleges he "immediately experienced a significant increase in the symptoms of his autism as well as in his anxiety disorder, including a regression in his communication and social skills and a marked increase in the incidence and severity of maladaptive behaviors."  Compl. (#1) at 15.

In November 2019 Plaintiff's pediatrician stated it was "imperative" that Plaintiff receive ABA therapy while at school "where [Plaintiff] is struggling the most."  When Plaintiff informed Defendant of his need to receive this therapy at school, Defendant refused.

On November 13, 2019, Plaintiff filed a Complaint in this court and alleged Defendant's refusal to accommodate his medical

needs for therapy violated the requirements of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and § 504 of the Rehabilitation Act (RA), 29 U.S.C. § 701, *et seq.*

On January 17, 2020, Defendant filed a Motion (#7) to Dismiss Plaintiff's Complaint for failure to exhaust administrative remedies pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*

## **STANDARDS**

The IDEA ensures children with disabilities receive needed special-education services. The IDEA offers federal funds to states in exchange for a commitment to furnish a "free appropriate public education" (FAPE) to all children with certain physical or intellectual disabilities. § 1412(a)(1)(A). A FAPE comprises "special education and related services," including both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. § 1401(9), (26), (29). *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748-49 (2017).

Under the IDEA an "individualized education program" (IEP) is the "primary vehicle" to provide each child with the promised FAPE. § 1414(d). An IEP sets out a personalized plan developed

by school officials, teachers, and parents to meet all of the child's "educational needs." § 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B). Among other things, the IEP lists the "special education and related services" to be provided so that the child can "advance appropriately toward attaining [educational] goals." § 1414(d)(1)(A)(i)(IV)(aa).

When parents and school representatives cannot agree on the adequacy of a child's IEP, the IDEA establishes formal procedures for resolving disputes. A parent may file a complaint with the local or state educational agency that triggers a preliminary hearing between the parties (§ 1415(b)(6)) or may proceed with mediation (§ 1415(e)). If a resolution cannot be achieved, the matter proceeds to a "due-process hearing" before an impartial hearing officer. § 1415(f)(1)(A), (3)(A)(i). Any decision by the hearing officer that grants substantive relief must be "based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). A parent who is unhappy with the outcome of the administrative process may then seek judicial review by filing a civil action in state or federal court. § 1415(i)(2)(A).

The IDEA is not the only federal statute that protects the interests of children with disabilities. The ADA and RA

5 – OPINION AND ORDER

also protect children and adults with disabilities in both public schools and other settings.  A plaintiff who seeks relief that is also available under the IDEA, however, must first exhaust the IDEA's administrative procedures.  20 U.S.C. § 1415(l).

Whether the IDEA's exhaustion requirement applies "hinges on whether a lawsuit seeks relief for the denial of a [FAPE]." *Fry*, 137 S. Ct. at 754.  If the remedy sought is not for the denial of a FAPE, then exhaustion of IDEA's procedures is not required.  *Id.*  The court determines whether a plaintiff's claim is because of denial of a FAPE by looking to the "substance" of the plaintiff's complaint rather than the labels used in the plaintiff's complaint.  "What matters is the crux – or, in legal-speak, the gravamen – of the plaintiff's complaint, setting aside any attempts at artful pleading."  *Id.* at 755.  "A court deciding whether § 1415(l) applies must therefore examine whether a plaintiff's complaint – the principal instrument by which [he] describes [his] case - seeks relief for the denial of an appropriate education."  *Id.*

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at

> a public facility that was *not* a school — say, a
> public theater or library? And second, could an *adult*
> at the school — say, an employee or visitor — have
> pressed essentially the same grievance? When the
> answer to those questions is yes, a complaint that
> does not expressly allege the denial of a FAPE is also
> unlikely to be truly about that subject; after all, in
> those other situations there is no FAPE obligation and
> yet the same basic suit could go forward. But when
> the answer is no, then the complaint probably does
> concern a FAPE, even if it does not explicitly say so;
> for the FAPE requirement is all that explains why only
> a child in the school setting (not an adult in that
> setting or a child in some other) has a viable claim.

*Fry*, 137 S. Ct. at 756 (emphasis in original).

## DISCUSSION

Defendant contends Plaintiff alleges the denial of a FAPE pursuant to the IDEA, and, therefore, Plaintiff must first exhaust his administrative procedures before he may pursue his claims in this court.

### I. Plaintiff's claims are not subject to the administrative-exhaustion requirements of the IDEA.

Plaintiff alleges, and Defendant does not contest, Plaintiff has a disability based on his autism. Plaintiff alleges he "experiences a mental-health crisis" at school and requires the services of an ABA therapist at school. Thus, Plaintiff alleges Defendant has failed to accommodate him by denying him access to medically necessary mental-health care

while at school.

Defendant, however, contends Plaintiff specifically alleges in his Complaint that Defendant's actions "prevented [Plaintiff] from accessing [his] education services at Jackson [Middle School]." Defendant, therefore, asserts Plaintiff must exhaust his administrative remedies as required by the IDEA before pursuing his claims in this court.

The court in *K.M. by and through Markham v. Tehachapi Unified School District,* No. 1:17-cv-01431, 2018 WL 2096326 (E.D. Cal., May 7, 2018), addressed the identical circumstances and applied the factors set out in *Fry*. In that case the plaintiff-child also required the services of an ABA therapist. The plaintiff brought a claim for violation of the ADA and RA when the defendant refused to allow the therapist to accompany the child during school to provide the prescribed therapy. The defendant asserted the plaintiff's claim was for denial of a FAPE and subject to exhaustion of administrative remedies under the IDEA. The court disagreed and stated:

> The clues posed in *Fry* indicate here the gravamen of K.M.'s Title II and RA claims do not seek remedies for the denial of a FAPE. The provision of an ABA therapist may indeed tangentially involve access to education in the sense that without the therapy, K.M. may not be able to access the curriculum appropriately. Nevertheless, the central tenant (*sic*) of Plaintiffs' claims here is that her medically

>     prescribed treatment for her disability is not being
>     accommodated and thus K.M. is precluded from access to
>     the school itself. Without appropriate ABA therapy at
>     school, Plaintiffs assert K.M. is unsafe because she
>     does not have guidance on appropriate behaviors with
>     peers, she has wandered off during school outings, she
>     has ingested another child's medication, and has come
>     home with unexplained bruises and a severe sunburn due
>     to being left outside for hours. The need for this
>     therapy centers on K.M.'s development, her ability to
>     focus on tasks and interact with peers, and to
>     maintain her safety—not her educational needs. As
>     such, this claim could be pressed against any place of
>     public accommodation that refused to allow K.M. to be
>     accompanied by her ABA therapist. Moreover, because
>     the essence of the claim does not pertain to K.M.'s
>     educational needs, the RA and ADA claims could be
>     brought by a visitor or an employee of the school who
>     had a similar need for medical accommodation. . . .
>     Under the *Fry* clues, the gravamen of K.M's claims
>     under the ADA and the RA here do not center on the
>     denial of a FAPE, but on access to the school
>     facilities.

2018 WL 2096326, at *5. Although the California court noted the plaintiff may have exhausted the administrative requirements of the IDEA when her claims were dismissed by an administrative law judge for lack of jurisdiction, the court, nonetheless, concluded the plaintiff's ADA and RA claims were not subject to the IDEA exhaustion requirements. *Id.*

On March 25, 2020, Plaintiff submitted the hearing transcript in *S.S.V. v. Gresham-Barlow School District No. 10J* as supplemental authority (#12) to support his argument that an ADA claim based on the defendant's refusal to allow the minor-

9 – OPINION AND ORDER

plaintiff to receive ABA therapy at school was not subject to IDEA exhaustion requirements. In *S.S.V.* the court concluded the plaintiff "was not asking for resources to be spent by the school," and "since [plaintiff is] not asking for resources then the primary implications of the IDEA aren't triggered." No. 3:19-cv-00314-JR (Simon, J., Feb. 27, 2020)(Dkt. #25). Accordingly, the court concluded plaintiff sought a reasonable accommodation rather than educational services. *Id.* In response, Defendant argues the court in *S.S.V.* applied the incorrect standard. Defendant asserts the IDEA requires exhaustion whenever the relief sought in the complaint is also available under the IDEA. 20 U.S.C. § 1415(l). The Supreme Court in *Fry*, however, held whether the IDEA's exhaustion requirement applies "hinges on whether a lawsuit seeks relief for the denial of a [FAPE]." *Fry*, 137 S. Ct. at 754. If the remedy sought is not for the denial of a FAPE, then exhaustion of IDEA's procedures is not required. *Id.* In other words, it is the nature of the relief the plaintiff seeks that is determinative of whether the IDEA's exhaustion requirement applies rather than whether the relief is also available under the IDEA.

Here Plaintiff's claims center on his need for medically necessary services to treat his underlying autism by an ABA therapist. The lack of treatment dramatically impairs Plaintiff's ability to function in any setting, including school. The substance of Plaintiff's claim is the need to receive mental-health treatment in the educational setting rather than mere access to educational services. Defendant's accommodation of Plaintiff's mental-health care and treatment, therefore, is not subject to the exhaustion requirements of the IDEA.

## **CONCLUSION**

For these reasons the Court **DENIES** Defendant's Motion (#7) to Dismiss Plaintiff's Complaint for failure to exhaust administrative remedies.

The Court **DIRECTS** Defendant to file an Answer to Plaintiff's Complaint **no later than April 27, 2020,** and **DIRECTS** the parties to confer pursuant to Local Rule 26-1 and to file **no later than May 8, 2020,** a proposed case-management plan. The

Court will then schedule a Rule 16 Conference in due course.

IT IS SO ORDERED.

DATED this 7th day of April, 2020.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge